IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRANDON CHERMAINE MALLET, | § | |
| #35737-479, | § | |
| Movant, | § | |
| | § | |
| v. | § | CIVIL CASE NO. 3:20-CV-3313-K |
| | § | (CRIMINAL NO. 3:18-CR-43-K-6) |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

MEMORANDUM OPINION AND ORDER

Movant Brandon Chermaine Mallet ("Mallet") filed a *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. As detailed herein, the motion to vacate sentence is **DENIED**.

## I.    BACKGROUND

Mallet pled guilty, pursuant to a plea agreement, to conspiring to interfere with commerce by robbery (Count 1) and interference with commerce by robbery (Counts 5 and 7). He was sentenced to an aggregate sentence of 170 months and a three-year term of supervised release. Crim. Doc. 361. The Court also ordered restitution in the amount of $243,424.35. Mallet's direct appeal was subsequently dismissed as frivolous under *Anders v. California*, 386 U.S. 738 (1967). *See United States v. Mallet*, 792 F. App'x 343 (5th Cir. Feb. 4, 2020).

On November 3, 2020, Mallet timely filed this § 2255 motion and later filed two supplements. Doc. 2; Doc. 5; Doc. 8. He raises multiple grounds challenging his

guilty plea and sentence.  Specifically, Mallet asserts:  (1) his conviction violated the Fifth Amendment's Double Jeopardy Clause; (2) his guideline range was wrongfully enhanced; (3) his restitution order is unlawful, (4) the indictment did not correctly charge the substantive counts for interference with commerce by robbery; (5) his guilty plea was involuntary; (6) his attorney was ineffective for failing to challenge a "traffic stop" on Fourth Amendment grounds and misinforming him about facts that proved his innocence; (7) his sentence is unconstitutional "under the principles" of *United States v. Davis*, 139 S. Ct. 2319 (2019); and (8) his attorney was ineffective for failing to advise him that the government's case was not readily provable.

After review of all pleadings and the applicable law, the Court concludes that Mallet's claims have no merit.  The § 2255 motion should therefore be dismissed.

## II.   ANALYSIS

### A. Applicable Law

To be constitutionally valid, a guilty plea must be knowingly, voluntarily, and intelligently made.  *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000).  In determining the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel.  *United States v. Shepherd*, 880 F.3d 734, 740-41 (5th Cir.

2018); *see also Boykin v. Alabama,* 395 U.S. 238, 244 (1969) (to be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence").

In addition, when challenging the validity of his guilty plea, a movant ordinarily may not refute his sworn testimony given at a plea hearing while under oath. *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998). The movant must also overcome the presumption of regularity and "great evidentiary weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly).

To succeed on a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697. To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id*. at 688.

Moreover, to demonstrate prejudice in the context of a guilty plea, the movant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The movant bears the burden of showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

### B. Guilty Plea was Voluntary and Counsel was not Ineffective

Mallet contends that his guilty plea was involuntary because his counsel was constitutionally ineffective in failing to challenge a "pretextual traffic stop" that led to his arrest.  Doc. 5 at 3-4.  Mallet asserts that counsel failed to "test[] the strength of the government's case" and "misinformed" him that law enforcement had the right to stop him.  Doc. 5 at 5-6.   Specifically, he claims that the stop was "unreasonable under the Fourth Amendment."  Doc. 5 at 6-8.

In his reply, Mallet adds that his plea was involuntary because defense counsel misled him about the "critical elements of the charged offense."  Doc. 15 at 6.  He avers that counsel "misinformed [him] about the actual facts that prove his innocence and all the critical elements pertaining to the plea agreement negotiation just to get [him] to plea[d] guilty."  Doc. 15 at 4; *see also* Doc. 8 at 2 (claiming "there was a good chance that due to the evidence Mallet would have proven actual and legal innocence

at the trial"); Doc. 15 at 5 (alleging counsel lied about "the actual facts . . . that would have proved his innocence").

The record belies Mallet's assertions, however.  In the plea agreement, Mallet affirmed that his plea of guilty was freely and voluntarily made and that he was fully satisfied with his lawyer's legal explanations of the plea agreement, his rights affected by the agreement, as well as alternatives available to him other than entering into the plea agreement.  Crim. Doc. 143.  Mallet repeated these affirmations at rearraignment before this Court.  Crim.  Doc. 378.  He admitted under oath that he understood the elements of the offenses to which he was pleading guilty and the potential penalties.  Crim. Doc. 378 at 9, 15-16.  He also confirmed that:  (1) he had reviewed the plea agreement with counsel and understood all of its provisions; (2) no one had made any promises to induce him to enter into the plea agreement; and (3) he was freely and voluntarily pleading guilty.  Crim. Doc. 378 at 11-12, 14.  Mallet also affirmed that he had reviewed the factual resume before signing it, and that the stipulated facts contained in it were true.  Crim. Doc. 378 at 16-16.  He further averred that he was fully satisfied with his counsel's advice.  Crim. Doc. 378 at 8.

Furthermore, Mallet had abundant time after the entry of his plea and through sentencing—over eight months later— to advise the Court that his guilty plea was involuntary and/or that he was dissatisfied with defense counsel's conduct.  Yet,

Mallet voiced no objection about the voluntariness of his guilty plea or his counsel's advice and allegedly deficient performance.  Crim. Doc. 375.  When given the opportunity to address the court, Mallet admitted his guilt and apologized.  Crim. Doc. 375 at 9-12.  In answer to the Court's question, he also said:  "I know what I did was wrong to the community and to those people that I hurt and to their families . . . ." Doc. 375 at 10.   These circumstances strongly suggest Mallet's claims are driven by "buyer's remorse" rather than any defect in the guilty plea procedure.

Further, Mallet presents only self-serving, *post hoc* assertions—not "contemporaneous evidence"—that his guilty plea was not knowing and voluntary. And his statements are belied by the record and insufficient to contradict his testimony at rearraignment.  *See  Lee v. United States*, ___ U.S. ___, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); *United States v. Crain*, 877 F.3d 637, 650 (5th Cir. 2017) (explaining "self-serving post hoc assertions about how [the defendant] would have pled" do not negate the contemporaneous comments at the plea hearing). As Mallet presents nothing but conclusory allegations in attempt to refute his sworn testimony and averments in the plea agreement he signed, his claim that his plea was

involuntary, unknowing, or unintelligent is meritless. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (requiring movant to produce "independent indicia of the likely merit of [his] allegations" to overcome re-arraignment testimony and plea agreement, which refuted his allegations).

Tellingly, Mallet also fails to explain how counsel's failure to contest the supposed "traffic stop" rendered his plea involuntary. His allegations are conclusory. Doc. 5 at 3-5. At best Mallet only says that he informed counsel of all the events that led to the stop and the ensuing state charges. Doc. 15 at 2-5. But he does not provide a link between the alleged ineffectiveness and his claim that the plea was defective.

That notwithstanding, his ineffective-assistance claim lacks merit. Contrary to Mallet's assertion, there was no *Terry* investigative stop on the day of his arrest. Rather, according to the PSR, which was accepted at sentencing, his arrest stemmed from a sting operation targeting jugging offenses. PSR ¶ 22, Crim. Doc. 286-1 at 11-12. Thus, counsel was not deficient in failing to challenge the arrest. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness.").

Next, Mallet asserts counsel failed to advise him that the government had "insufficient evidence . . . to win at trial" and that "there was a good chance" that Mallet could "have proven actual and legal innocence at the trial" or "impeach[ed] government witnesses." Doc. 8 at 2. Mallet's allegations are once more unsupported and meritless. According to the evidence summarized in the PSR, the government had a strong case against Mallet. *See* PSR ¶¶ 9-21, Crim. Doc. 286-1 at 6-10.

> More than 35 jugging offenses that occurred within the Northern District of Texas have been linked to this group through seized cell phones, social media accounts, and business records to include communication, photographs, videos, cell site data, rental car records, and other information in connection with the investigation. At least six jugging offenses that occurred in Los Angeles between September 8, 2017, and February 21, 2018, have been linked to this group. In addition to changing the regions in which they committed the juggings, the conspiracy evolved in the manner in which they executed the juggings. For example, the group began to use two vehicles after four participants were arrested on June 21, 2016. The occupants of one vehicle (hit vehicle) engaged the victim and took the victim's property and the occupants of the second vehicle conducted surveillance and watched for law enforcement. After the jugging, many of the occupants of the hit vehicle relocated to the second vehicle with the stolen money. Participants in the conspiracy used the term "working" or "work" to reference the juggings. Some participants made social media postings or cell phone videos after the juggings depicting them counting the money, bragging about the juggings in profanity laced dialogue, and/or indirectly taunting the victims by commenting they had stolen the victim's money, the victim would have otherwise used to pay rent, mortgage, and various other expenses.

PSR ¶ 13. In addition, at sentencing, Mallet conceded under oath to having seen himself in the video in which he and others bragged about the jugging offenses.

Page **8** of **14**

Crim. Doc. 375 at 9.   Based on this record, Mallet again fails to show deficient performance.

In any event, Mallet has wholly failed to demonstrate prejudice—namely that but for his counsel's erroneous advice he would not have pleaded guilty and would have insisted on going to trial.  *Hill*, 474 U.S. at 59.  Mallet has offered no proof other than his belated, conclusory assertions here that he even considered doing anything other than entering a knowing and voluntary plea.  In sum, due to his failure to show deficient performance or prejudice, his pre-plea ineffective assistance claims lack merit.

For the foregoing reasons, the Court concludes that Mallet has failed to establish that his guilty plea was unknowing and involuntary due to counsel's allegedly deficient performance or that he was prejudiced as a result of the same.  Thus, his claims fail.

### C. Remaining Claims are Waived, Procedurally Barred and Meritless

Lastly, Mallet asserts (1) a double jeopardy violation, (2) guideline-enhancement errors, and (3) indictment and *Davis* errors.  But these claims are waived because they do not fall within the appeal/collateral waiver in his plea agreement.  Crim. Doc. 143 at 5-6.  As discussed in detail *supra*, Mallet knowingly and voluntarily entered into the plea agreement, which included the appeal waiver.

Additionally, since Mallet did not present the claims on direct appeal, they are procedurally barred, absent a showing of cause and prejudice or that he is "actually innocent" of the crime for which he was convicted. *See United States v. Logan*, 135 F.3d 353, 355 (5th Cir. 1998) (*citing United States v. Frady*, 456 U.S. 152, 168 (1982)).

Mallet does not satisfy the cause-and-actual prejudice exception to excuse his failure to raise the claims on direct appeal. His bare mention of ineffective assistance of counsel on appeal is conclusory at best. Doc. 2 at 8 (claiming no proper representation after sentencing); Doc. 8 at 4 (asserting counsel did not permit him to provide input on claims raised on appeal). Further, because he identifies no nonfrivolous issue that could have been raised on appeal (as explained below), he cannot show that counsel rendered constitutionally ineffective assistance in failing to file a merits brief. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Newsome v. United States,* No. 3:13–CV–4954, 2015 WL 695595, *8 (N.D. Tex. Feb.17, 2015). Indeed, the appellate court gave Mallet the opportunity to raise whatever claims he desired and he failed to respond. *See Mallet*, 792 F. App'x 343.

Further, apart from his unsupported assertions that counsel failed to inform him of his actual or legal innocence, Mallet offers nothing in his pleadings in attempt

to meet that heavy burden.  Accordingly, his remaining claims are waived and/or procedurally barred.

    That notwithstanding, they fail on the merits as detailed below.

    i.   *Double Jeopardy*

Mallet alleges his conviction violates the Double Jeopardy Clause because "the identical evidence [was used] to prove two separate crimes"— conspiracy to interfere with commerce by robbery in Count 1 and interference with commerce by robbery in Counts 5 and 7.  Doc. 2 at 7.  It is fundamental that conspiracy and the substantive offense that is the object of the conspiracy are separate and distinct crimes.  *See Callanan v. United States*, 364 U.S. 587, 593 (1961); *United States v. Kalish*, 734 F.2d 194, 197–99 (5th Cir. 1984) ("[U]under the *Blockburger* test, the offenses of conspiracy to commit a crime and the crime itself are separate offenses.").  It is also well established that the double jeopardy clause is not violated by prosecution for both a conspiracy and aiding and abetting the underlying substantive offense.  *See United States v. Payan,* 992 F.2d 1387, 1392 (5th Cir. 1993).

    Consequently, Mallet was not subjected to double jeopardy for being charged in the same prosecution with conspiracy to interfere with commerce by robbery and aiding and abetting violations of the substantive offense.  *See Callanan*, 364 U.S. at 588, 597 (addressing convictions for the substantive crime of obstructing commerce

by extortion and conspiracy to commit the same crime); *United States v. Bright*, 630 F.2d 804, 813 (5th Cir. 1980) (same as to RICO conspiracy and aiding and abetting RICO violation).  Mallet's double jeopardy claim therefore lacks any foundation.

### ii.   *Sentence Enhancement Claims*

Mallet asserts the Court erred in enhancing his sentence under the sentencing guidelines by (1) improperly applying the grouping rule—namely "for being on all Counts" although he pleaded guilty only to three counts, and (2) holding him responsible for the "serious bodily injury" of the victims in counts 1, 5, and 7 even though no harm was shown.  Misapplication of the sentencing guidelines, however, does not give rise to a constitutional issue cognizable under § 2255.  *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  Moreover, Mallett's assertions are conclusory and the PSR described in details the victim's injuries.

### iii.   *Challenge to Restitution Order*

Next Mallet asserts the restitution order is unconstitutional because no specific amount of restitution was alleged in the indictment.  Doc. 2 at 7 (asserting the indictment did not charge him "with taking a specific amount of money" and "sum of money came up at sentencing").  But the Court lacks jurisdiction under § 2255 to address a challenge to the restitution order.  *See United States v. Hatten*, 167 F.3d 884, 887 and nn. 5 & 6 (5th Cir. 1999) (restitution claims are not cognizable under §

2255 because the movant does not claim the right to release from custody); *Campbell v. United States*, 330 Fed. App'x 482, 482-483 (5th Cir. 2009) (per curiam) (claims concerning restitution should be raised on direct appeal not a § 2255 motion). Thus, Mallet's claim is not cognizable under § 2255.

      *iv.*  *Defective Indictment*

Mallet asserts that Counts 2-9 of the indictment "are fatally defective and fail[] to charge an offense of Interference with Commerce by Robbery." Doc. 2 at 8. He avers the indictment did not (1) include the amount of money taken, (2) list the address where the robberies occurred, (3) identify the action that constituted actual or threatened force, (4) list the interstate commerce that was affected, and (5) show how commerce was affected.

A knowing and voluntary guilty plea waives all non-jurisdictional defects that occurred prior to the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). As previously noted, Mallet's guilty plea was knowing and voluntary. Thus, by pleading guilty, Mallet waived his right to challenge any nonjurisdictional defect in the indictment. *See United States v. Daughenbaugh,* 549 F.3d 1010, 1012 (5th Cir. 2008). It is well established that "defects in an indictment do not deprive a court of its power to adjudicate a case." *United States v. Cotton,* 535 U.S. 625, 630 (2002); *see also United States v. Cothran,* 302

F.3d 279, 283 (5th Cir. 2002) ( "*Cotton* demonstrates that standard waiver principles apply to defects in the indictment.").

In addition, "[a]n indictment need only charge the essential elements of the offense, permitting the accused to prepare a defense." *United States v. Chappell,* 6 F.3d 1095, 1099 (5th Cir. 1993).  Mallet's indictment met all of these requirements by reciting the elements of the charged conspiracy offense and its object offenses and the eight substantive offenses.  *See United States v. Smith*, 598 Fed. Appx. 219, 220 (5th Cir. 2014).  Accordingly, Mallet's claim is waived and also lacks substantive merit.

v.  *Davis Claim*

Lastly, contrary to Mallet's assertion, *United States v. Davis*, 139 S. Ct. 2319 (2019), has not applicability in his case.  Simply stated, Mallet was not charged with violating 18 U.S.C. § 924(c), the provision at issue in *Davis*.

III.  **CONCLUSION**

Accordingly, the motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

SO ORDERED.

Signed April 25th, 2022.

ED KINKEADE
UNITED STATE DISTRICT JUDGE

Page **14** of **14**